IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

SUZANNE KENNEDY,                    *

      Plaintiff,              *

vs.                                 *
                       CASE NO. 3:06-CV-47 (CDL)
                       *

CLARKE COUNTY SCHOOL DISTRICT;
VERNON PAYNE; DAVID NUNNALLY;       *
CHARLES WORTHY; and OVITA
THORNTON in their individual        *
and official capacities as
members of the CLARKE COUNTY        *
BOARD OF EDUCATION,
                       *

      Defendants.            *
_____

O R D E R

Plaintiff Suzanne Kennedy filed the above-captioned action alleging that Defendant Clarke County School District ("CCSD") and Defendants Vernon Payne, Charles Worthy, and Ovita Thornton, in their individual and official capacities as members of the Clarke County Board of Education ("the Board"), engaged in reverse race discrimination.[1] Presently pending before the Court are Defendants Clarke County School District, Vernon Payne, and Charles Worthy's Motion for Summary Judgment (Doc. 43) and Defendant Ovita Thornton's Motion for Summary Judgment (Doc. 48). For the following reasons, Defendants' motions are denied.

---

[1]The Court dismissed Defendant David Nunnally pursuant to a consent order entered on October 24, 2006.

Plaintiff, a white female, is a sixteen-year veteran of the CCSD with a bachelor's degree in early childhood education, a master's degree in education and leadership, and certification as a teacher support specialist. From 1989 through 1998, Plaintiff taught kindergarten, and in 1998, she was hired as the Lead Resource Coordinator for the Even Start Family Literacy Program.[3] Plaintiff supervised the program from 1998 to 2004, during which time the program flourished and became one of the largest family literacy programs in Georgia.

## I. Creation of the Pathways to Success Director Position

In 2002, the CCSD grew concerned about minority achievement within the district and formed the Multicultural Task Force to respond to this issue. The task force recommended the creation of various positions, including Directors of Teaching and Learning, Student Achievement, and the Pathways to Success Program ("PSP").[4] Although temporary appointees initially filled each of these director positions, it was understood that permanent positions would be posted

---

[2]For purposes of summary judgment, the Court construes the facts in the light most favorable to Plaintiff, resolving all reasonable inferences in her favor. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[3]This program administers grant funds and is part of the CCSD's family literacy program, which deals with issues concerning adult, early childhood, and parent education as well as family engagement issues.

[4]The PSP was an after-school program intended to provide additional support for students who were not progressing academically. While the program was available at the elementary, middle, and high school levels, the majority of the funding was for the middle school program.

after one year and appointees would be chosen through an open selection process. In May 2004, Dr. Jose Boza, Executive Chief of Instructional Services for the CCSD, contacted Plaintiff to gauge her interest in the interim PSP Director position. In June 2004, the Clarke County Superintendent, Dr. Lewis Holloway, appointed Plaintiff as interim PSP Director. Caucasian individuals filled all three interim director positions.

During 2004 and 2005, the PSP thrived. Student participation increased, and Plaintiff was recognized at the state level for her contributions to the program. In the meantime, the two other interim director positions were permanently filled, and in February 2005, the permanent PSP Director position was posted.[5] On April 19, 2005, an interview team selected three candidates to interview for the permanent position. The team unanimously named Plaintiff as the most qualified candidate and recommended that she be selected as the permanent PSP Director. Holloway accepted the interview team's recommendation and submitted Plaintiff's name to the Board for final approval.

## II. The Board's Denial of Plaintiff's Appointment

On May 5, 2005, the agenda for the regularly-scheduled Board meeting called for a vote on Holloway's recommendation that Plaintiff fill the permanent PSP Director position. In a closed executive

---

[5]The record indicates that the Director of Student Achievement and Educational Equity position was never posted; instead, Monica Knight, a Caucasian female, was noncompetitively appointed to permanently fill the position. (Knight Dep. 35:19-37:7, July 16, 2007.)

session, the Board voted to deny Holloway's recommendation by a margin of 5-4. Three of the four African-American Board members, Defendants Worthy, Thornton, and Payne, voted against Holloway's recommendation. Two Caucasian members, Sidney Anne Waters and Chester Sosebee, also voted against Plaintiff's recommendation. African-American Board member Rev. David Nunnally voted for Plaintiff, as did Caucasian members Allison Wright, Dr. Denise Mewborn, and Dr. Jackie Saindon.

On May 12, 2005, Boza and Holloway attended the next regularly-scheduled Board meeting and executive session in order to explain the interview process and their belief that Plaintiff was the most qualified applicant. Board member Mewborn called for a vote to rescind the original vote denying Holloway's recommendation of Plaintiff, but the vote failed by the same 5-4 margin.

Plaintiff contends that she was denied the permanent PSP position solely because she is white. She points to the following evidence in support of this allegation: (1) during the May 12th executive session, Defendant Thornton picked up an organizational chart and said "white," "white," "white," while pointing to each director's name, (Pl.'s Dep. 33:2-18, Nov. 14, 2006); (2) Thornton allegedly stated that the OIS directors "did not reflect diversity" and that "we are committed to diversity," (Holloway Dep. 80:12-16, April 13, 2007 [hereinafter Holloway Dep. I]); (3) Thornton allegedly accused Holloway of trying to "shove" another candidate "down [the Board's] throats" and said that she would not support Kennedy, (Boza

Dep. 73:1-16, 78:17-19, April 12, 2007); (4) Thornton allegedly told Boza that he "did not hold up [his] end of the deal" with respect to Monica Knight's hiring, implying that he reneged on his commitment to "diversity," (Pl.'s Dep. 38:5-25); (5) Defendant Payne testified that he did not vote for Kennedy because she had not "walk[ed] in the shoes" of the underprivileged children of Clarke County, (Payne Dep. 21:24-25, April 24, 2007); and (6) Board member Saindon told Plaintiff that she "was voted against based on [her] color." (Pl.'s Dep. 13:9-11.)

On May 18, 2005, the PSP Director position was reposted. Based on the outcome of the initial vote, Plaintiff did not reapply for the position. Instead, Plaintiff returned to her original position as the Even Start Lead Resource Coordinator, which Plaintiff contends was a demotion within the Clarke County school system.[6] Although numerous applicants were interviewed, none were selected, and the position remained open until July 2005. At that time, Plaintiff

---

[6]Defendants contend that Plaintiff was not subject to an adverse employment action because she was returned to her original position as Even Start coordinator and did not suffer a loss in pay or benefits. However, "a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000) (citation omitted). The court must ask whether a reasonable person in the plaintiff's position would consider the employment action to be materially adverse. *Id.* Plaintiff alleges that because she was "demoted" from director to coordinator, she was unable to participate in director-level meetings and no longer answered directly to Boza. Moreover, after she returned to the coordinator level, Plaintiff reported to the Director of Early Learning and Family Engagement, who was Plaintiff's peer while Plaintiff was the PSP Director. The Court finds that a genuine issue of material fact exists as to whether a reasonable person would have believed that this loss in prestige and responsibility would constitute an adverse employment action.

contends that because the position was contingent upon grant money and needed to be filled immediately, Linda Dunn, a white female allegedly less-qualified than Plaintiff, was noncompetitively appointed to the permanent directorship.[7]

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants denied her the appointment to permanent PSP Director based upon her race and therefore violated her right to equal protection of the laws under the Fourteenth Amendment. For the following reasons, the Court finds that genuine issues of material fact exist as to whether Defendants violated Plaintiff's constitutional right to be free from racial discrimination in her employment.

DISCUSSION

## I.   Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

---

[7]In her complaint, Plaintiff also claims that Defendants discriminated against her by failing to hire her for a position as the principal at Chase Street Elementary School. Plaintiff failed to address any claims regarding the principal position in her response to Defendants' Motions for Summary Judgment, and at oral argument, Plaintiff agreed that she had abandoned those claims. Accordingly, Defendants are entitled to summary judgment to the extent Plaintiff's claims are based on her failure to be hired as the principal at Chase Street Elementary School.

(1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his . . . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (per curiam) (internal quotation marks and citation omitted).

## II.  Defendant Clarke County School District

Plaintiff asserts that Defendant Clarke County School District violated her federally protected rights and is liable under 42 U.S.C. § 1983.  Under this provision,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

When a person seeks to hold a governmental body such as a school district liable under section 1983 for the decisions of that governmental body's employees or officers, it is important to recognize "that a [local governing body] cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a [local governing body] cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 691 (1978) (emphases in original).  Instead, "only those ... officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion). Furthermore, official policymakers of a local government expose the local government to liability under § 1983 only when they act pursuant to an official custom or policy and that custom or policy causes a constitutional tort.  *See, e.g., Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002) (per curiam).

8

Plaintiff contends that when the Board denied her appointment to PSP Director, it was acting as the official policymaker for the CCSD, and that when it denied her appointment based upon race, it violated her equal protection rights. It should be beyond dispute that the Eleventh Circuit has "recognized an equal protection right to be free from employment discrimination, . . . and [the Eleventh Circuit has] found various race- and gender-based employment decisions by public officials . . . in violation of that constitutional right[.]" *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003) (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1313, 1321 (11th Cir. 2000); *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1064 (11th Cir. 1992); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991)). Thus, in order to survive the Defendant school district's motion for summary judgment, Plaintiff must demonstrate that genuine issues of material fact exist as to whether: (1) the Board is a final policymaker with respect to employment decisions, (2) the Board's decision embodied an unconstitutional policy, and (3) the Board's decision resulted in a deprivation of Plaintiff's equal protection right to be free from intentional employment discrimination.

A.  Final Policymaker

The Court must first determine who has final policymaking authority over the employment decision at issue. The question of whether a government official has final policymaking authority is a question of state law. *Praprotnik*, 485 U.S. at 123. Georgia law

provides that "[a]ll teachers, principals, other certificated professional personnel, and other personnel of a local unit of administration shall be employed and assigned by its governing board on the recommendation of its executive officer." O.C.G.A. § 20-2-211(a). Accordingly, the Board itself is the final policymaker regarding the employment of certificated and administrative personnel in Clarke County, including Plaintiff.

B.   Unconstitutional Policy Resulting in Constitutional
     Violation

Next, the Court must determine whether genuine issues of material fact exist as to whether the Board acted pursuant to an unconstitutional policy and whether the Board's decision deprived Plaintiff of her constitutional rights. A single discriminatory decision by a final policymaker can constitute both the unconstitutional policy and the deprivation necessary to establish § 1983 liability "where the evidence that the municipality ha[s] acted and that the plaintiff ha[s] suffered a deprivation of federal rights also prove[s] fault and causation." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (citation omitted). In *Brown*, the Court reasoned that where the municipality's decision itself is unconstitutional, "fault and causation [are] obvious," and therefore "proof that the municipality's decision was unconstitutional would suffice to establish that the municipality itself was liable for the plaintiff's constitutional injury." *Id.* at 406; *see also Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005) (finding that the single

10

decision to enforce an illegal statute against the plaintiff was sufficient to expose the city to § 1983 liability).

In this case, a single, unconstitutional decision by the Board to reject Plaintiff on the basis of her race "would suffice to establish that the [Board] itself was liable for the plaintiff's constitutional injury." *Brown*, 520 U.S. at 406. However, because Georgia law vests the entire Board with final policymaking authority, the Board can only subject the Defendant school district to § 1983 liability "if the [Board] itself acted with an unconstitutional motive." *Matthews*, 294 F.3d at 1297. "An unconstitutional motive on the part of one member of a . . . majority is insufficient to impute an unconstitutional motive to [the group] as a whole." *Id.*; *see also Mason v. Village of El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001) ("[T]here can be no municipal liability unless all three members of the council who voted against reappointing Plaintiff shared the illegal motive."); *Rolle v. Worthy County Sch. Dist.*, 128 F. App'x 731, 733 (11th Cir. 2005) (per curiam) (affirming summary judgment in employment discrimination case in part because plaintiff "failed to show that a majority of the Board was motivated by an improper purpose"). Thus, Plaintiff must establish that genuine issues of material fact exist as to whether each Board member who voted against Plaintiff's recommendation did so in a discriminatory manner.

C.  Analyzing Plaintiff's Claims Under *McDonnell Douglas*

Section 1983 employment discrimination cases that are based upon circumstantial evidence are generally analyzed under the familiar

11

*McDonnell Douglas* framework. *See, e.g., Harris v. Shelby County Bd. of Ed.,* 99 F.3d 1078, 1082-83 (11th Cir. 1996).[8] In a failure-to-hire case, a plaintiff may establish her prima facie case by producing evidence that "(1) she is a member of a protected class, (2) she was qualified for a position and applied for it, (3) she was not considered for the position despite her qualifications, and (4) equally or less qualified individuals outside her protected class were considered or hired for the position." *Underwood v. Perry County Comm'n*, 431 F.3d 788, 794 (11th Cir. 2005) (per curiam) (citation omitted), *reh'g en banc denied*, 452 F.3d 1258, 1259 (11th Cir. 2006). When the position remains open, a plaintiff can satisfy the fourth element by demonstrating that after she was rejected for the position, the position remained open and the employer continued to receive applications for the position from persons with the plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff can support a prima facie case, a presumption of discriminatory intent is created. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory behavior.

---

[8]Plaintiff contends that "direct" evidence of discriminatory intent exists in this case. The Court finds that while a good faith argument can be made that some of Plaintiff's evidence is "direct" rather than "circumstantial," that characterization is certainly subject to dispute. Moreover, it is clear that as to at least three of the Board members the evidence is purely circumstantial. Accordingly, the Court finds that the case should be analyzed under the *McDonnell Douglas* framework.

*McDonnell Douglas Corp.*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (2002). If the defendant carries this burden, the presumption of discrimination is rebutted. *Burdine*, 450 U.S. at 255. However, the plaintiff can still defeat summary judgment by presenting evidence sufficient to create a genuine issue of material fact as to whether the proffered legitimate non-discriminatory reason is merely pretext for a discriminatory decision. *McDonnell Douglas Corp.*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

       *1.   Prima Facie Case*

    Plaintiff contends that she has established her prima facie case under *McDonnell Douglas* by showing that: (1) she belongs to a protected class; (2) she applied for and was qualified for a job that Defendant was seeking to fill; (3) despite her qualifications, she was not hired; and (4) after she was rejected, the position remained open and Defendant continued to seek applicants from persons with Plaintiff's qualifications. *See Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). While there is no significant dispute about whether Plaintiff satisfied the first three requirements, Defendants contend that Plaintiff cannot establish her prima facie case because she has failed to show that the person ultimately hired for the position was a person outside Plaintiff's class.

    It is not an absolute requirement that Plaintiff establish that the person who eventually was appointed to the position for which Plaintiff applied is a person of a different race. Plaintiff can

satisfy the fourth prong by establishing that after she was rejected the position remained open and Defendant continued to seek applicants from persons with Plaintiff's qualifications. *McDonnell Douglas Corp.,* 411 U.S. at 802. In this case, while the position was eventually filled by another white female, it did remain open for an extended period of time. Furthermore, there is evidence that it was ultimately filled in order to avoid losing funding.

More fundamentally, Defendant's rigid application of the *McDonnell Douglas* analysis has been rejected by the Courts which have recognized that there are circumstances where an employee is discriminated against based on race even though the employer eventually fills the position with someone of the aggrieved employee's same race. As explained by The Eleventh Circuit, "'[t]he underlying purpose of the fourth element in the *McDonnell Douglas* formulation is [] to establish [an] unlawful inference of discrimination.'" *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534 (11th Cir. 1984) (quoting *Jones v. W. Geophysical Co. of Am.*, 669 F.2d 280, 284 (5th Cir. 1982) (internal citation omitted)). The Eleventh Circuit has also "repeatedly emphasized that the requisite showings that make up a prima facie case are not meant to be rigid or inflexible." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999) (citations omitted). The Courts have consistently avoided a "mechanical application" of the fourth *McDonnell Douglas* factor as advocated by Defendants because such application "would result in the proscription and prevention of one type of discrimination . . . only,

the situation in which a person had been replaced by someone outside the protected class." *McCorstin v. U.S. Steel Corp.*, 621 F.2d 749, 753 (5th Cir. 1980) (citation and footnote omitted).[9]

In accordance with these principles, the Eleventh Circuit has explicitly rejected the conclusion that under *McDonnell Douglas*, "an absolute requirement for a prima facie case is a showing that after the plaintiff's discharge the defendant hired a person who was not in the plaintiff's protected class[.]" *Howard*, 726 F.2d at 1534. In *Howard*, the Eleventh Circuit clarified the plaintiff's burden, holding that "[a]ll that the plaintiff need do is prove by a preponderance of the evidence that he was discharged from the position for which he was qualified under circumstances which give rise to an inference of unlawful discrimination." *Id.* (internal quotation marks and citation omitted). The court further explained that "proof that the employer replaced the fired minority employee with a non-minority employee is not the *only* way to create such an inference." *Id.* (internal quotation marks and citation omitted) (emphasis in original). Therefore, when a plaintiff cannot establish the fourth *McDonnell Douglas* element by simply pointing to the existence of a more favorably-treated person from outside her protected class, a court must "examine[] the record to determine whether the fact that another [white] was hired would rule out the

_____

[9]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

15

inference of discrimination and thereby preclude the plaintiff from establishing a prima facie case." *Id.* at 1535.

In *Howard*, the Eleventh Circuit concluded that the plaintiff had produced evidence sufficient to fulfill the fourth *McDonnell Douglas* element. 726 F.2d at 1536 (holding that "the district court erred in granting summary judgment merely because [the defendant] has not turned down all black applicants"). Specifically, the court noted that an eleven-month lapse between the plaintiff's rejection and the hiring of another minority candidate "significantly diminish[ed] the reliability of the subsequent hiring as an indicator of [the defendant's] intent at the time it rejected [the plaintiff]'s application." *Id.* Moreover, the court observed that the fact that the defendant hired another minority only after the plaintiff filed an EEOC charge "suggests that the hiring might have been motivated by the filing." *Id.* Finally, the court indicated the importance of the fact that the plaintiff's "allegations throughout this litigation and his affidavit submitted in opposition to the motion for summary judgment raise the issue whether, regardless of who was ultimately hired, [the plaintiff] was denied employment as a result of a racially discriminatory practice[.]" *Id.*

After examining the evidence in the light most favorable to Plaintiff, the Court is satisfied that Plaintiff points to sufficient evidence to meet her burden under the fourth element of the *McDonnell Douglas* test. First, the lapse in time between Plaintiff's rejection and Linda Dunn's hiring "significantly

16

diminish[es] the reliability of the subsequent hiring as an indicator of [Defendants'] intent at the time it rejected [Plaintiff's] application." *Howard*, 726 F.2d at 1535. Moreover, there is also some evidence that Dunn's hiring was: (1) motivated by the potential elimination of grant funds; (2) completed without a formal application, interview, or competitive selection process; and (3) done to facilitate the hiring of a new African-American administrator in Dunn's original position. (*See* Ex. 4G to Def. Ovita Thornton's Mot. for Summ. J.; Boza Dep. 102:23-104:4.) The existence of these other motivations undermines Defendants' argument that Dunn's hiring belies the Board's racial discrimination.

Moreover, the record contains evidence that "regardless of who was ultimately hired, [Plaintiff] was denied employment as a result of a racially discriminatory practice[.]" *Howard*, 726 F.3d at 1535. Specifically, Plaintiff points to evidence that arguably demonstrates a general consensus among members of the Board that they needed to hire more African-Americans in leadership roles. (*See, e.g.,* Saindon Dep. 67:2-19, Dec. 22, 2006; Holloway Dep. I 39: 12-21, 26:5-19; Boza Dep. 111:20-112:21; Payne Dep. 85:17-24.) Plaintiff also points to comments made by Defendants Payne and Thornton as evidence from which a reasonable finder of fact may infer discriminatory animus. (*See, e.g.,* Holloway Dep. I 80: 21-81:5; Sosebee Dep. 21:14-23, July 17, 2007; Payne Dep. 21:22-22:9.) In addition, the record indicates that after the Board denied Plaintiff's recommendation, seven out of eight of the Board's approvals were of African-American principals.

(Holloway Dep. I 120:18-121:2.)  Plaintiff also states that Board member Saindon told her that the Board made its decision based on race and encouraged Plaintiff to file suit.  (Pl.'s Dep. 13:4-19, 19:1-11.)

It is clear that anti-discrimination laws do not "'give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.'"  *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984) (quoting *Connecticut v. Teal*, 457 U.S. 440, 455 (1982)).  Plaintiff produced sufficient evidence that she was rejected "under circumstances which give rise to an inference of unlawful discrimination," and Dunn's hiring can "scarcely rule out the inference of discrimination in connection with the earlier denial of [Plaintiff's] application."  *Howard*, 726 F.2d at 1534, 1535.  Because "[t]he underlying purpose of the fourth element in the *McDonnell Douglas* formulation is precisely to establish this unlawful inference of discrimination", *id.* at 1534, Plaintiff has satisfied the fourth element and established her prima facie case.

   *2.  Legitimate, Non-Discriminatory Reasons and Pretext*

Because Plaintiff has met her burden of establishing a prima facie case of discrimination, the burden shifts to the Defendant school district to show that each member of the Board who voted against Plaintiff can articulate legitimate, non-discriminatory reasons for his or her decision.  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769-70 (11th Cir. 2005) (per curiam).  "As this

burden involves no credibility determination, it has been characterized as 'exceedingly light.'" *Id.* (citations omitted). "So long as the employer articulates a clear and reasonably specific non-discriminatory basis for its actions, it has discharged its burden of production." *Id.* at 770 (internal quotation marks and citation omitted).

Once a defendant meets its burden of articulating a legitimate, non-discriminatory reason for its decision, "the presumption of discrimination is eliminated." *Id.* at 771 (citation omitted). "To survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Id.* (citations omitted). A plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason" for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 512 n.4 (1993) (internal quotation marks and citation omitted) (emphases in original). A plaintiff can meet this burden by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (internal quotation marks and citation omitted).

In this case, Defendant has met its burden of showing that each person who voted against Plaintiff's recommendation articulated a

legitimate, non-discriminatory reason for doing so. The Court finds, however, that Plaintiff has produced sufficient evidence from which a reasonable fact finder could conclude that the reasons proffered by the Board members were pretextual, thus precluding summary judgment.

First, Defendant Thornton contends that her primary reason for voting against Plaintiff was her concern about potential unfairness of the selection process. (Thornton Dep. 54:22-56:13, April 18, 2007.) Thornton also contends that comments by Board member Waters led her to believe that Plaintiff was not the most qualified person for the job. (*Id.* at 51:4-19.) Waters, however, denies making the comments attributed to her by Defendant Thornton. (Waters Dep. 37:24-38:4, July 17, 2007.) The record also contains evidence that Thornton was not even familiar with the selection committee's process when she voted on May 5th, casting doubt on her claim that she was concerned with the fairness of that process. (Thornton Dep. 60:22-25.)

Next, Defendant Payne contends that his main reason for denying Plaintiff's recommendation was his belief that Plaintiff did not have the proper training or character to work with underprivileged children, particularly because she had never been poor herself. (Payne Dep. 21:22-22:17.) However, Payne made no effort to investigate his assumptions that Plaintiff did not have training in motivating and teaching underprivileged children, or that Plaintiff has never been poor. (*Id.* at 30:8-10, 24:1-26:8.)

Defendant Worthy testified that he believed Plaintiff was not qualified because the PSP Director position required at least three years of prior administrative experience as a principal or assistant principal. (Worthy Dep. 30:11-21, 32:12-19, April 20, 2007.) The posted description for the PSP Director position contained no such requirement, however, and Worthy did not ask whether Plaintiff had administrative experience in any other capacity. (*Id.* at 30:22-31:33.)

Board member Waters testified that she did not vote for Plaintiff strictly because Plaintiff lacked middle school experience and therefore was not qualified for the position. (Waters Dep. 37:24-38:4.) Again, middle school experience was not a requirement per the job posting, and it is clear that the PSP program was designed to serve all grade levels. (Boza Dep. 44:13-17.) Waters also voted in favor of the appointments of Monica Knight and of Plaintiff as interim PSP director, despite neither having any middle school experience. (Waters Dep. 9:24-10:2, 16:18-17:10.)

Finally, Board member Sosebee contends that he did not vote for Plaintiff because Ms. Waters told him Plaintiff was not qualified. (Sosebee Dep. 16:17-17:17.) Sosebee, however, conducted no independent investigation of Plaintiff's qualifications, notwithstanding the fact that an independent hiring committee found Plaintiff to be the most qualified applicant for the position. (*Id.*)

In sum, each member of the Board has met his or her "exceedingly light" burden of articulating a legitimate, non-discriminatory reason

for the decision to deny Plaintiff's appointment. However, although each Board member argues that they based their decision on Plaintiff's alleged lack of qualifications, each member also admits that they conducted virtually no investigation of the Plaintiff's actual qualifications or the requirements of the position for which Plaintiff applied. The Board also failed to question Plaintiff's qualifications, even when Dr. Boza appeared at the May 12th meeting to explain the hiring committee's decision. (Boza Dep. 70:11-20.) Finally, when Defendant Thornton made racially-based statements during the May 12th discussion of the employment decision, none of the other Board members expressed any disagreement with or disapproval of those sentiments, and their subsequent votes were consistent with the ratification of Thornton's allegedly discriminatory motive.[10] (*See* Boza Dep. 77:14-19 (testifying that his impression was that other Board members seemed to exhibit "nonverbal agreement" with Defendant Thornton's comments).) Because Plaintiff has produced evidence from which a reasonable finder of fact could conclude that each Board member's proffered reason for denying

---

[10]After the fact, at least one other Board member explained that she did not consider Thornton's comments to be racially discriminatory. (Mewborn Dep. 37:13-19, Mar. 30, 2007.) However, that interpretation is certainly subject to dispute, and genuine issues of material fact exist as to whether the comments indicated discriminatory intent and whether that intent was shared by the other Board members.

Plaintiff's appointment is "unworthy of credence," Defendant Clarke County School District's Motion for Summary Judgment is denied.[11]

## III. CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES: QUALIFIED IMMUNITY

Plaintiff also brings claims against Defendants Thornton, Payne, and Worthy in their individual capacities. Defendants seek summary judgment on these claims based upon qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defendant has the burden of proving that he or she was performing a discretionary function; once proven, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.* To determine whether qualified immunity is appropriate, the Court must first decide whether the Plaintiff has alleged facts sufficient to demonstrate that the government official violated a constitutional right and must then decide "whether the right was clearly established . . . in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Ultimately, "[t]he question is whether the [official]'s conduct is

---

[11]Plaintiff also asserts claims against the Board members in their official capacities. Those claims are redundant. "[A}n official capacity suit against a government official is generally treated as a suit against the underlying governmental entity." *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005). Therefore, the claims against the Defendant Board members in their official capacities are dismissed.

objectively reasonable in light of the facts confronting the [official]." *Vinyard*, 311 F.3d at 1347 (citation omitted).

There is no real dispute in this case that Defendants were performing a discretionary function when they voted to deny Dr. Holloway's recommendation of Plaintiff. *See, e.g., Smith v. Lomax*, 45 F.3d 402, 406 (11th Cir. 1995) (observing that the defendant members of the Fulton County Board of Commissioners were "exercis[ing] the discretionary function of casting their votes" to make an employment decision). Consequently, the burden shifts to Plaintiff to provide evidence sufficient to create a genuine issue of material fact that Defendants engaged in conduct that violated clearly established law. *See Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1064 (11th Cir. 1992) ("[T]he relevant question on a motion for summary judgment based on a defense of qualified immunity is whether a reasonable official could have believed his or her actions were lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred.") (internal quotation marks and citation omitted) (alteration in original).

The Court finds it "patently obvious" that, at the time of their decision, clearly established law prohibited Defendants from using race as the basis for their hiring decisions. *Smith*, 45 F.3d at 407; *see also Bogle v. McClure*, 332 F.3d 1347, 1355 (11th Cir. 2003) (individual members of the board of trustees for the public library system were not entitled to qualified immunity in part because there

was "no doubt that . . . when the Librarians were transferred, it was clearly established that intentional discrimination in the workplace on account of race violated federal law."); *Yeldell*, 956 F.2d at 1064 ("[i]t is beyond doubt that the principal right allegedly violated by the defendants—the equal protection right to be free from intentional racial discrimination—was clearly established at the time [of the plaintiff's termination]") (citation omitted).

As previously discussed, genuine issues of material fact exist as to whether Defendants Thornton, Payne, and Worthy voted against Plaintiff's appointment based upon her race. If they did so, they violated Plaintiff's clearly established rights under the Fourteenth Amendment to the U.S. Constitution. Accordingly, these Defendants are not entitled to summary judgment based upon their qualified immunity defenses.[12] Defendants' motions for summary judgment as to Plaintiff's claims against them in their individual capacities are therefore denied.

## IV.  Attorney's Fees

In light of the Court's foregoing rulings denying Defendants' motions for summary judgment on Plaintiff's discrimination claims, Defendant's motion for summary judgment on Plaintiff's claim for attorneys fees must likewise be denied.

---

[12]The Court also rejects Defendants' contention that they are entitled to summary judgment because the Board itself was the final decision maker, and therefore its individual members cannot be liable. *See Smith,* 45 F.3d at 407 (qualified immunity denied to Defendant members of Fulton County Board of Commissioners who voted to replace a white female clerk with an African-American female).

CONCLUSION

For the foregoing reasons, the Court denies Defendants Clarke County School District, Vernon Payne, and Charles Worthy's Motion for Summary Judgment (Doc. 43) and denies Defendant Ovita Thornton's Motion for Summary Judgment (Doc. 48).

IT IS SO ORDERED, this 23rd day of January, 2008.


                                        S/Clay D. Land
                                       CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE